Filed 10/6/22  P. v. Frandsen CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN WILEY FRANDSEN,<br><br>Defendant and Appellant. | B314195<br><br>(Los Angeles County<br>Super. Ct. No. LA046248) |

APPEAL from an order of the Superior Court of Los Angeles County.  Eric P. Harmon, Judge.  Affirmed.

Loyola Law School, Juvenile Innocence & Fair Sentencing Clinic, Marisa Harris and Christopher Hawthorne for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Benjamin Wiley Frandsen appeals from the order denying his petition for resentencing pursuant to former Penal Code section 1170.95. During the pendency of this appeal, former section 1170.95 was renumbered as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) We refer to the statute only by its new designation for clarity.

We affirm.

## BACKGROUND

The charges against defendant arose from events that occurred in late 2002.

Shane Huang, a friend of defendant's, grew marijuana illegally at his home in Canoga Park. Sometime in November 2002, Huang discovered evidence of a burglary at his home and the theft of $6,000 worth of marijuana. Huang suspected Ben Wertzberger and Adar Ne'eman of the theft. Wertzberger helped Huang with the grow operation in exchange for a place to stay. Ne'eman was a friend of Wertzberger's visiting from Israel. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1129–1130.)

On December 2, 2002, defendant, at the request of Huang, went to Huang's home with his longtime friend, Nick Turner. Wertzberger and Ne'eman were there, seated together on a couch in the living room. Two others, Jamil Kharboutli and Joseph Pistone, were also there, having also been beckoned by Huang who claimed to have caught the marijuana thieves. (*People v. Frandsen*, *supra*, 33 Cal.App.5th at pp. 1130–1131.)

Huang, with the assistance of defendant, Turner, Kharboutli and Pistone, held Wertzberger and Ne'eman captive inside the house. Huang angrily interrogated and threatened both men for a long time. Defendant is a former marine, skilled

2

in martial arts with a black belt in Taekwondo.  He complied with Huang's request to play the "tough guy role" while Wertzberger and Ne'eman were interrogated about the theft. (*People v. Frandsen*, *supra*, 33 Cal.App.5th at pp. 1130–1131, 1137.)

At one point during the interrogation, Huang said he wanted to kill Wertzberger and Ne'eman, but everyone objected. Kharboutli said, " 'If you kill them, you must kill me, too.' " (*People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1137.)

Eventually, Wertzberger and Ne'eman admitted taking the marijuana.  Plans were made to get money from their families in Israel to pay for the stolen marijuana.  (*People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1137.)

Tuner, Pistone and Kharboutli left.  Defendant stayed with Huang and the two victims.  (*People v. Frandsen*, *supra*, 33 Cal.App.5th at pp. 1130–1131.)  Wertzberger and Ne'eman, still seated together on the couch, "spoke to each other in Hebrew.  Wertzberger then got up and walked toward the bathroom, and Huang followed him.  Moments later, [defendant] heard a loud thump that sounded like a door slamming shut, followed by a crash and multiple thumps." (*Id.* at p. 1137.)

Defendant's attention remained drawn to the sounds from the bathroom.  When he turned back around, Ne'eman rushed "toward him with a large bong raised above his head. [Defendant] threw up an elbow, which struck Ne'eman in the throat and caused him to fall to the ground." (*People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1138.)  Ne'eman was incapacitated as a result of the blow to his neck.  Defendant went down the hall to the bathroom and saw Wertzberger dead on the floor.  (*Id.* at pp. 1137–1138.)  When defendant returned to the living room,

"he saw Huang holding a plastic bag over Ne'eman's face." (*Id*. at p. 1138.) Ne'eman appeared to take one final breath and died. (*Ibid*.)

Huang came up with a plan to bury the bodies in the desert and then make it look like Wertzberger and Ne'eman had gone to Las Vegas. (*People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1138.) Huang and defendant placed both bodies in the trunk of Huang's car. Huang then drove to the desert outside of Las Vegas with defendant following in Wertzberger's car. Huang and defendant buried the bodies in a single grave in the desert and then drove to Las Vegas where they abandoned Wertzberger's car with the keys in the ignition. They used Ne'eman's credit card to make purchases in Las Vegas to make it appear the two men were still alive, and then they returned to Los Angeles.

Almost a year later, following an investigation involving the FBI, defendant and Huang were arrested. Defendant and Huang were charged with various felonies, including two counts of murder. Turner was also charged and pled guilty to two counts of false imprisonment in exchange for probation and his testimony against defendant and Huang. Huang was tried separately from defendant and convicted of two counts of murder. His conviction was affirmed on appeal. (*People v. Huang* (Oct. 2, 2007, B192819) [nonpub. opn.].) Huang and Turner are not parties to this appeal.

In defendant's first trial, he was found guilty on both murder counts. The conviction was reversed on appeal for instructional error. (*People v. Frandsen* (Sept. 11, 2007, B191189) [nonpub. opn.].) Defendant was retried and found guilty of one count of second degree murder (Ne'eman) and one count of involuntary manslaughter (Wertzberger). His conviction

was affirmed on appeal. (*People v. Frandsen* (2011) 196 Cal.App.4th 266, 271.) The superior court subsequently granted defendant's petition for habeas corpus on the ground one juror did not understand English sufficiently to sit as a competent juror.

In 2016, defendant was tried a third time. The jury trial was held before Judge Eric P. Harmon, the same judge who heard the resentencing petition at issue in this appeal.

Numerous witnesses testified, including Turner and Pistone. Defendant testified in his own defense and made many admissions about his role in the deaths of the victims and the subsequent cover-up. Defendant admitted striking Ne'eman in the throat and that he may have died because of that blow. (*People v. Frandsen, supra*, 33 Cal.App.5th at p. 1138.) Defendant also admitted "that Huang's act of placing a bag on his head might have been 'redundant.' " (*Ibid*.)

The jury found defendant guilty of second degree murder and involuntary manslaughter. Defendant was sentenced to 15 years to life on the murder count, plus a consecutive four-year upper term for the manslaughter count.

On appeal, this court corrected the abstract of judgment with respect to the restitution award and otherwise affirmed defendant's conviction in its entirety. (*People v. Frandsen, supra*, 33 Cal.App.5th 1126.)

In April 2019, after the passage of Senate Bill 1437 (2017–2018 Reg. Sess.), defendant filed a petition in propria persona requesting appointment of counsel and resentencing pursuant to Penal Code section 1172.6. The court appointed counsel for defendant and the parties filed briefs.

5

The court granted defendant's request to substitute in new counsel and to submit supplemental briefing. Defendant's supplemental papers included three exhibits: excerpts of the testimony of Pistone and Turner from Huang's trial, a June 2016 memorandum from the district attorney's office summarizing a phone call with Kharboutli, and the June 2019 transcript from defendant's hearing before the Board of Parole.

Defendant's testimony before the Board of Parole included admissions similar to his trial testimony about his role in the deaths of Wertzberger and Ne'eman. Defendant admitted, among other things, that he "assaulted" Ne'eman and "actually injured him causing harm" and that he helped Huang cover up the crimes "to save [his] own skin."

The evidentiary hearing on defendant's petition was held May 7, 2021. Because of the ongoing COVID-19 pandemic, defendant waived his right to be personally present and appeared via videoconference. The prosecutor relied on the record of conviction and did not offer new evidence. Over the prosecutor's objection, the court admitted the three exhibits offered by defendant in his supplemental brief as additional evidence.

After entertaining lengthy argument from counsel, the court took defendant's petition under submission. At the conclusion of the hearing, the court said it would need time to "review everything" including the relevant "legal standards" and to "issue a written order" explaining its "determinations relating to the facts drawn from the evidence in assessing whether the People have met their burden in this matter." A month later, the court issued a detailed, 28-page order denying defendant's petition with specific citations to the factual record upon which the court relied.

This appeal followed. We grant the People's request to take judicial notice of the appellate record from defendant's direct appeal from the third trial (case No. B280329).

## DISCUSSION

Defendant contends the court exceeded its authority in determining he was the actual killer because the jury in his third trial never made any such finding, and the People did not present any new evidence at the evidentiary hearing demonstrating he was the actual killer. Defendant further argues there is no substantial evidence to prove beyond a reasonable doubt that he acted with implied malice and was the actual killer. Defendant's contentions are without merit.

1. **The Court Did Not Exceed Its Authority in Finding Defendant Was the Actual Killer.**

Penal Code section 1172.6, subdivision (d)(3) sets forth the parameters of an evidentiary hearing on a resentencing petition. It expressly provides that both sides may "offer new or additional evidence" and that the court acts as an independent factfinder. (*Ibid.*)

In discussing the statutory language, the Supreme Court said "the Legislature authorized the parties to offer new or additional evidence during the [Penal Code] section [1172.6] process in order to allow the parties to explore issues they did not explore under the prior state of the law. The statute contemplates that such evidence may inform whether a conviction remains valid despite the ameliorative provisions of Senate Bill 1437." (*People v. Gentile* (2020) 10 Cal.5th 830, 856; see also *People v. Myles* (2021) 69 Cal.App.5th 688, 698 [the "clear legislative intent" is to "allow both parties to locate and introduce

7

evidence they did not have a chance to present in the original guilt proceeding"].)

Defendant acknowledges the statutory language and the court's role as an independent factfinder but nevertheless argues the court exceeded its authority by finding the evidence, including the new evidence he offered, proved he was the actual killer of Ne'eman. Defendant offers no persuasive argument or authority to support his argument the trial court was limited to considering the theories of guilt relied upon in the former trial under the law as it existed prior to the statutory amendments. Such a construction is illogical and contrary to the clear legislative intent that the trial court is empowered to consider and resolve new issues that may not have been previously explored in the prior proceedings. Indeed, even where the parties rely only on the record of conviction and do not offer new evidence, the court is required to make new factual findings as to the defendant's guilt under the amended murder statutes. It therefore makes no sense to conclude that the trial court, tasked with making new factual findings as to guilt, would be constrained by the former legal theories advanced in prior proceedings.

The court's order reflects that it understood it was required to assess the evidence anew and make new findings as to defendant's guilt. The court set forth in detail the evidence upon which it relied, with citations primarily to the testimony received at trial—a trial over which the court presided. Nothing in the court's order or in the court's statements on the record at the hearing suggest the court misunderstood its role or held the prosecution to some other, lesser standard. Nor is there any evidence, as defendant appears to suggest, that the court

8

somehow usurped the role of the prosecutor.  The prosecution argued several theories of guilt, including that defendant was the actual killer of Ne'eman, based on the totality of the evidence, the pathologist's testimony, the circumstantial evidence of intent, and defendant's own admissions both at trial and before the Board of Parole.

We are also not persuaded by defendant's contention the court improperly relied on the factual summary from the prior appellate opinion.  The argument is without any basis in the record.  Other than acknowledging that it read the prior opinion and that it contained an accurate summary of the trial evidence, the court otherwise did not cite to or make any material reference to the opinion.  The court's order makes clear its focus was on the trial record and the new evidence offered by defendant.

Before explaining the bases for its denial, the court stated that, "[i]n addition to presiding over the jury trial in this matter," the court had reviewed the entire record of conviction, including the "entire ten-volume set of trial transcripts, and the trial exhibits," the parties' briefs and exhibits, and the arguments of counsel from the hearing on the petition.  Throughout the 28-page order, the court cited specifically to the trial testimony and the new testimony offered by defendant from his hearing before the Board of Parole—not the appellate opinion.

**2.** **Substantial Evidence Supports the Court's Denial.**

We apply the substantial evidence test in assessing the court's order.  (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022 [applying substantial evidence review to factual findings made after evidentiary hearing that petitioner was not entitled to resentencing under Pen. Code, § 1172.6]; see also *People v. Williams* (2020) 57 Cal.App.5th 652, 663 [" ' "Where the trial

9

court applies disputed facts" ' to a statute, ' "we review the factual findings for substantial evidence and the application of those facts to the statute de novo." ' "].)

In amending Penal Code section 188 and section 189, the Legislature sought " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Notwithstanding the statutory changes made to the felony murder rule and the natural and probable consequences doctrine, implied malice remains a valid theory of murder liability for a direct perpetrator or aider and abettor.

Penal Code section 188, as amended by Senate Bill 1437, provides that "(a)  For purposes of Section 187, malice may be express or implied.  [¶]  . . .  [¶]  (2)  Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

The court wrote 17 pages detailing the evidence from the trial record upon which it based its conclusion that defendant was guilty beyond a reasonable doubt of second degree implied malice murder.  The court cited the evidence relevant to both defendant's physical actions and his mental state.

For instance, the court cited the testimony of the forensic pathologist who testified with considerable detail about the blunt force trauma to Ne'eman's neck and her opinion that he died as a result of those injuries.  The court quoted the pathologist's opinion that the blows to the victim's neck (which defendant admitted he inflicted) caused such severe injury that it would have required "immediate medical attention and securing of the

airway for a person to survive that injury."  The court also cited to the testimony of Lindsey Devore, Sam Edmonson and Rogelio Flores, all friends of defendant's, who all said defendant "admitted the killings" to them in the days and weeks afterward.

The court also cited defendant's admissions made at trial and before the Board of Parole, in addition to the evidence demonstrating the victims were extremely vulnerable as captives, defendant's willing participation as the "tough guy" in the terrorizing of the victims, defendant's expertise in martial arts, and defendant's extensive assistance in covering up the crimes. The court explained it did not find credible defendant's efforts to "minimiz[e] his violence" by describing the blows inflicted as merely reflexive.

Defendant points to other evidence in the record purportedly showing Huang killed Ne'eman by placing a plastic bag over his head.  The court called this evidence an "uncorroborated assertion" that, even if accepted as true, did not detract from defendant's actions being a substantial factor, if not the most important factor, in Ne'eman's death.  The trial court was tasked with assessing the credibility of the evidence and determining its weight.  Defendant is asking us to reweigh that evidence and the credibility determinations made by the trial court.  That is not our function on appeal and we decline to do so.

We find there is ample evidence supporting the court's conclusion that defendant is guilty of second degree implied malice murder.  (See *People v. Cravens* (2012) 53 Cal.4th 500, 508 [implied malice murder requires evidence of the performance of an act by the defendant, the natural consequence of which is dangerous to life, defendant's knowledge of the dangerousness and acting in conscious disregard of that knowledge].)

11

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.